## Case No. 16,504.

UNITED STATES v. THREE HUNDRED AND NINETY–SIX BARRELS DISTILLED SPIRITS.

[3 Int. Rev. Rec. 135.]

District Court, E. D. Missouri. Feb., 1865.

INTERNAL REVENUE ACT—FORFEITURE OF LIQUORS —BONA FIDE PURCHASERS AND LIENORS.

[1. A bona fide purchaser for value prior to seizure is protected.]

[2. Bona fide liens upon spirits are protected against a forfeiture under the internal revenue act, provided the liens be subsisting at the date of the seizure, and also at the time when the claims thereunder are passed upon by the court.]

[3. In order that a factor's lien may be protected against the forfeiture of the liquor, it must appear that his demand requires for his protection an enforcement of his lien against the specific property seized.]

[This was an information of forfeiture against three hundred and ninety-six barrels of distilled spirits, claimed by Ferdinand Braun. The charge to the jury appears in Case No. 16,502. Motions for a new trial and in arrest of judgment were overruled (Id. 16,503), and the case is now before the court for final proceedings, including the determination of the petition of Ferdinand A. Reuss, intervenor, to have allotted to him a part of the fund.]

W. N. Grover, U. S. Dist. Atty., and George B. Kellogg, for the United States.

Gustavus Koerner, John M. Krum, Ernst W. Decker, Chester Harding, Jr., and Chester H. Krum, for claimant and intervenor.

OPINION OF THE COURT. The res in this case was claimed by Braun, the distiller, as his property, and by him bonded, under the act of congress. As the collector of internal revenue retained the custody, instead of delivering the property to the marshal, it was returned to the distiller on bond, as prescribed by law; which bond has been produced in court, and the principal and sure-

ties therein ordered, according to its tenor, to pay, as a consequence of the judgment of forfeiture, the appraised value of the res into the registry. The bond taken in this case is conditioned that the principal and sureties will pay, etc., as the court may order, if said res is adjudged to be forfeited. The form of the bond, and the obligations of the parties thereto, have been well settled by repeated adjudications in United States courts. There is no difficulty on these points. Reuss intervenes for a portion of the proceeds, claiming a factor's lien thereon for the amount stated. It appears, from the evidence, that for a long period of time antecedent to that under inquiry, and down to the time of seizure, he had been the consignee or regular factor of Braun, under the following agreement: to receive and sell the spirits distilled by Braun, make advances from time to time, etc., and have as compensation therefor ten per cent. interest on moneys advanced, two and a half per cent. commission on sales, etc.; all advances to be covered by shipments. The balance due at the date of the seizure was the amount for which he claims a factor's lien. The res was, at the time of seizure, in his possession, as consignee, under the foregoing agreement. The rule of law under the facts proved give him such a lien. It is not necessary to review the general doctrines on that subject; for a brief statement of the general propositions applicable to this, and other cases under advisement, must suffice. Although a bill of lading, prima facie, gives to the consignee such a right of property as authorizes him to sue the ship-owner, even in trover, yet that rule springs chiefly from the contract of affreightment and the privity of parties thereto. A shipment to meet a previous acceptance, or an acceptance of a bill drawn against the shipment, or a shipment to cover a balance due or previous advances, or payments made by a factor on account of a shipment made, gives a lien to the factor; and the property consigned to the factor is the primary fund to which he must look for reimbursement. Abb. Shipp. 333; [9 N. Y.] 486; 22 Pick. 40; [Brown v. M'Gran] 14 Pet. [39 U. S.] 479; 4 Mees. & W. 775, 791; 12 Const. [12 N. Y.] 62.

There is no doubt that on the facts presented, the intervenor had a factor's lien on the res when it was seized by the collector, which has not been discharged by any subsequent payment of the balance due. The subsequent purchase of property from Braun, for which a time bill was given, does not affect this case, even though the bill may not have been negotiated; for that purchase did not carry any title to that property. The naked question is, therefore, before the court —whether, under the 68th section of the internal revenue act [of June 30, 1864 (13 Stat. 248)], a factor's lien is protected where the bona fides are unquestionable.

The subject is not wholly free from doubt

or difficulty. This court has already held, in this case, that a bona fide purchaser for value, prior to seizure is protected. The language of the 68th section is, that the owner, etc., shall forfeit, etc.; from which it was held, ex vi termini, that only that is forfeited which he owns. How can he forfeit what does not belong to him? and how can he be owner of what he does not own? But the settled rules of construction with regard to statutory forfeitures, make the forfeitures under that section operate only from the time of seizure. Of course, sham sales, or sales in fraud of the law, are not protected. The purchaser must act bona fide. An analysis of the whole act confirms that view. Section 28 provides for collection of duties or taxes by distraint of personalty; and section 30 of realty. Section 45 defines the force and effect of the collector's bill of sale of personalty, and section 30 of his deed for realty. "Said deed * * * shall be considered and operate as a conveyance to the purchaser, of the title to said estate, but shall not affect the rights of innocent parties, acquired previously to the claim of the United States under the act. * * * And the claim of government to lands sold under and by virtue of the foregoing provisions, shall be held to have accrued at the time of seizure thereof." Thus the rights of innocent parties acquired previously to the seizure are exempted, in express terms, and it is difficult to conceive how it could have been otherwise, even had that express provision been omitted; unless there had been a forfeiture, eo instante, by the positive requirement of the statute. Again: Section 48, which provides for seizures of personalty by the collector, says the same "may be seized by any collector," etc., "and the same shall be forfeited to the United States." In those cases the act contemplates that the seizure will precede the forfeiture. Section 55 makes duties on distilled spirits a lien on the distillery and the lot of land on which it is situated, and also on the stills, vessels, fixtures, and tools in the distillery. Section 69 gives for nonpayment of the duties and the increased per centum therein imposed, as a penalty, a lien on the distillery. An analysis of the act, in short, shows that forfeitures of personalty date from the seizure. In many cases a lien is given, but not on the spirits manufactured. The reason is obvious. As an article of commerce, it could not be thus covered with liens, without defrauding and ruining innocent purchasers. The common law presumptions are left to apply, viz.: that possession is prima facie evidence of title, and that liens are lost when the possession is abandoned. With realty and fixtures the rule is different, and hence the act recognizes the distinction and the salutary reasons in which they are founded. It goes even further in fact, in the 30th section, and makes the title to realty under distraint relate only to the date of seizure.

The same principles which protect the bona fide purchasers, protect also subsisting liens. At first blush, this may seem to operate perniciously; but on consideration of the whole subject, it will be found to be as salutary and important as the common law rules on the subject in all ordinary cases. The general principles of law under which the commerce of the country is carried on, if overturned by the internal revenue act, would be destructive of commerce, and consequently of the very object of the revenue act itself. If there can be no sales of distilled spirits without a continuing liability to forfeiture from subsequent as well as antecedent acts of the distiller, then no purchases would be made, and the manufacture for sale would cease with the demand. An essential part of the machinery whereby sales are effected is by consignments, etc.; and that mode of operating, together with advances on the faith of shipments, etc., has come to be necessary to the successful operation of manufacturing enterprises, especially by small capitalists. If no one can advance on shipments with safety, all advances must cease. If the bona fide purchaser is to be protected, why not the qualified owner, to the extent of his ownership or interest in the res itself? The same care must be observed in each instance. When an intervenor appears, claiming to be the absolute or qualified owner, the bona fides are open to investigation. A merely colorable transaction, for the sake of shielding the distiller or his property, cannot prevail against the rights of the United States. Whatever real interest the distiller has remaining in the property at the time of the seizure, whether legal or equitable, is forfeited.

The effect of this ruling, upon the practice of the courts, may be easily understood. If the collector is to seize only what spirits the distiller owns, then if he happens to seize other spirits, the bona fide purchaser may contest the fact of ownership. If his purchase were made, bona fide, prior to seizure, then, whether the distiller had violated the provisions of the act or not, the finding of that fact would dispose of the case. So it might sometimes happen with a lien large enough to absorb the whole value of the res. True, the ordinary practice is, to first determine whether the causes of forfeiture, as alleged in the information, really exist; and if judgment is obtained thereon, to then consider the demands filed by interveners. Still, the order of proceedings is in the discretion of the court; and, to save time and expense, the fact of ownership, or of the lien of demands, may well be determined in the first instance, in proper cases and on issues joined. Really a demand by an intervenor, when based on a lien, as in this case, comes in its proper order after judgment of forfeiture and sale. That sale give a full title, and the incumbrancer receives only his due share of the proceeds. His share cannot be

ascertained until sale is made; for that is the only mode of learning whether there will be a surplus for the original owner, or the government, which succeeds to his rights. Without elaborating this branch of inquiry, the court decides that Reuss has a factor's lien for the balance due him at the date of the seizure, which has not since been paid. If the res were in actual custody, a venditioni exponas would issue, and his demand be paid out of the proceeds of the sale; but as a bond has been given for the appraised value of the res, and the amount thereof has been ordered to be paid into the registry, the court now grants the petition of the intervenor, and orders the sum claimed by him to be paid out of the fund.

The rulings by this court are to the effect: That bona fide sales and liens are protected, but the liens must be subsisting at the date of the seizure, and also at the time when the intervening demand, or claim, is passed upon by the court. All of the facts, and circumstances connected with the lien, will be carefully scrutinized, so that the same may not operate as a cover to, or for the special benefit of, the dishonest distiller. It is not enough that the factor has a lien, according to commercial rules, but it must also appear that his demand requires for his protection an enforcement of his lien against the specific property seized. If, for instance, the distiller, for the purpose of defrauding the government, secures continuously large advances from his consignee and ships to the latter all his distilled liquors as soon as manufactured, the bona fides would be rigidly scrutinized, and also the means of the consignee to enforce his demand against the consignor, without reliance upon the specific lien. In no case is a factor's lien to be used for the benefit of the distiller, by withdrawing from the fund in court a portion thereof for the payment of his debts, when the factor can collect from him what is due, without difficulty. Hence, each case will necessarily have to be decided on its own merits, under the general rules stated.